## Elkhorn Mining Corporation v. Commonwealth.

(Decided January 26, 1917.)

### Appeal from Floyd Circuit Court.

Intoxicating Liquors—Sale of on Leased Premises—Statute.—A company will not be held criminally liable, under section 2557, Kentucky Statutes, for knowingly renting a house or premises in which intoxicants are sold, unlawfully, where it is not shown by the Commonwealth that the defendant company knew, or by the exercise of reasonable prudence could have known, at the time or before it entered into a lease contract with its lessee, that its lessee intended to or would sell intoxicants on its premises in violation of law, though after said lease contract was made, it knew such sales of intoxicants were being made.

E. C. O'REAR and SMITH & COMBS for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The Elkhorn Mining Corporation, incorporated, was indicted by the grand jury of the Floyd Circuit Court, in February, 1915, for the offense of willfully and knowingly permitting intoxicating liquors to be sold on its premises in the town of Wayland, Floyd county, Ky., and fined $100.00. Judgment was rendered thereon and from this verdict and judgment the company appeals.

The indictment, omitting the formal parts, is as follows:

"The said defendant, on the 4th day of February, 1915, in the county and town aforesaid, did unlawfully, knowingly and willfully permit spirituous, vinous, malt and intoxicating liquors to be sold upon its premises without a license so to do, by Joe Cook, and others to the grand jury unknown, the defendant being the lessee, owner or controller of the premises, upon which the said liquor was sold, to-wit: A house land and premises in the town of Wayland, Floyd county, Kentucky."

The appellant insists that this indictment does not sufficiently charge the offense, or any offense, especially that it does not come within sec. 2572, Ky. Stat., which provides a penalty against "the person in possession of the premises on which liquor is sold, disposed of, obtained or furnished in violation or evasion of law," and therefore the defendant's demurrer to the indictment should have been sustained.

The attorney for the Commonwealth who prosecuted this case in the lower court, says in his brief, that the indictment was drawn under and intended to conform to sec. 2557, Ky. Stats., which provides:

"Any person who knowingly furnishes or rents a house, room, wagon or other conveyance, or thing in which spirituous, vinous, or malt liquors are sold, bartered or loaned, in violation of this act shall be punished by fine, &c."

The indictment charges that defendant company unlawfully, knowingly, and willfully permitted Joe Cook to sell spirituous, vinous, malt and intoxicating liquors upon premises of which the defendant was the lessee, owner or controller.

Whether this language sufficiently charges the defendant with the offense denounced in section 2557, Ky. Stats., which says: "Any person who knowingly furnishes or rents a house, room, &c.," depends upon a care-

ful consideration of the statute, and the meaning of the words "furnish or rent," and the word "permit." If the defendant furnished or rented the house with knowledge or information sufficient to have put a reasonably prudent person on his guard, that it was to be used for the sale of intoxicating liquors, and it was so used, then it would be guilty and to so charge it in the indictment would be sufficient; but is it sufficient to charge that the defendant "did unlawfully, knowingly and willfully permit spirituous, vinous, malt and intoxicating liquors to be sold upon its premises?" The word "furnish" in its common and usual acceptation means to supply or provide. The word "permit" in its ordinary sense means, to allow, to grant, to give leave or liberty, and implies knowledge and consent.

But to charge the defendant with permitting liquors to be sold upon premises in its control is to charge it with knowingly allowing liquors to be sold on premises in its control, and whether the word "furnish" or the word "permit" be used would not be material. The indictment under consideration is not aptly drawn, as will be observed by glancing at section 2557, Ky. Stats. This is an offense created by statute, and it is generally sufficient for an indictment to follow the language of the statute, in such cases, but it is otherwise where a statute only fixes a penalty for an offense existing under the common law. The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be employed. If it be in substance the same, it will be sufficient.

It was said in the case of Overstreet v. Commonwealth, 147 Ky. 471; 144 S. W. 751:

"But the strict and technical rules of criminal pleading that prevailed at common law, and for many years in this state, have been superseded by more just and sensible practice, that declines to be controlled by unimportant and unsubstantial forms that serve to delay and obstruct the administration of the criminal law, without protecting the accused in any right guaranteed to him by either the common law or the constitution or statutes of the state. It is of course fundamental that every person accused of a crime shall be informed of the nature of the accusation against him, so that he may be prepared to make his defense; and with

this object in view, it is provided that in section 122 of the Criminal Code of Practice that "the indictment must contain: (1) the title of the prosecution, specifying the name of the court, in which the indictment is presented, and the names of the parties; (2) a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the rights of the case." And in section 124 that "the indictment must be direct and certain as regards: (1) the party charged; (2) the offense charged; (3) the county in which the offense was committed; (4) the particular circumstances of the offense charged, if they be necessary to constitute a complete offense." In other sections there are provisions further regulating the practice in respect to indictment; but the essential things are that the indictment shall contain: "(a) the name of the party charged; (b) the offense charged; (c) the county in which it was committed; (d) and the statement of the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding, to know what is intended, and such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the rights of the case. It is apparent that when an indictment furnishes this information the accused cannot be misled or deceived by it, or fail to know what offense he is charged with, nor will the court be in doubt when it comes to pronounce judgment." Rutland v. Commonwealth, 169 S. W. 584; Commonwealth v. Ransdall, 155 S. W. 1117, 153 Ky. 334.

From this we conclude that while the indictment does not in all respects conform to the statutory provisions yet we perceive no reason why it is not sufficient to put the defendant upon notice of the offense charged, since it in words describes the act intended to be denounced by the statute, and the demurrer to the indictment was properly overruled.

Without devoting time to questions raised respecting evidence heard on the trial, we pass to the consideration of the motion of appellant made at the conclusion of the evidence for the Commonwealth for a peremptory in-

struction to the jury to find it "not guilty." The evidence for the Commonwealth is not altogether convincing. But there is evidence tending to show that intoxicating liquors were sold on the premises of appellant in the town of Wayland, and that after the sales were made the attention of the defendant company and its officers, was called to the violations. Just which house the sale was had in, does not appear, or indeed does it satisfactorily appear that the sale was made on premises under the control of the defendant company. Wayland is a mining camp and defendant company has the whole town, except a small part, under its control and management, leasing and renting the houses to persons in its employ, but in each instance, requiring the lessee or tenant to sign a written contract not to engage in the sale of intoxicating liquors while in the occupancy of the said house, or premises, and to maintain good order. It is admitted that Floyd county is local option territory.

If the sales of intoxicating liquors were actually made on the premises of the defendant company, it could not be held liable under the indictment, unless it be proven that it let or rented the house or premises to the person making the sale, or someone for him, with the knowledge or understanding that intoxicating liquors were to be sold thereon, in violation of law.

This court in the case of the Commonwealth v. Morris, 129 Ky. 440, in a case similar to the one at bar, held:

"To sustain a conviction under the statute it is necessary that there should be some evidence, direct or circumstantial, conducing to show that the owner or controller of the leased property, or premises, knew or had such information as would put a person of ordinary prudence upon notice, at or before the time the lease was entered into, that it was the intention of the lessee to sell, in violation of law, liquor in or upon the property leased."

The Commonwealth introduced no evidence whatever on the trial of this case conducing to show that the owner or controller of the leased property knew, or had such information as would put a person of ordinary prudence upon notice, at the time or before the lease was made and entered into, that it was the intention of the lessee to sell liquor in violation of law on

the property, but it was specifically provided in the contract that no such thing should happen upon the premises, and there is no evidence tending in the slightest degree, to show that the defendant company or its officers, in charge of its business, had knowledge or information at the time or before the lease was made, that liquors would be sold there in violation of law.

According to the construction placed upon section 2557 Ky. Stats., the leasing or letting of premises must be with intention, knowledge or information that intoxicating liquors are to be sold or will be sold by the lessee, or by another, upon the premises in violation of law, and the mere fact that after a tenant entered the premises, he engages in the sale of intoxicating liquors in violation of law, and the owner, or lessor controlling the property has knowledge or received information of such sale, is not sufficient to sustain a conviction under this statute. Blocker v. Commonwealth, 153 Ky. 307, 308.

It is not shown in evidence that Joe Cook, named in the indictment, ever occupied the property of defendant company, or that any one of the persons charged with, or convicted of the sale of intoxicants, resided on the property of the defendant.

For these reasons the trial court should have sustained the motion of the defendant company for a peremptory instruction to the jury at the conclusion of the evidence for the Commonwealth. The judgment is reversed, and the cause remanded for a new trial consistent with this opinion.