# Talbott, Auditor of Public Accounts, v. Caudill et al.

(Decided March 14, 1933.)

BAILEY P. WOOTTON, Attorney General, and F. M. BURKE, Assistant Attorney General, for appellant.

MORRIS & JONES and FRANK E. DAUGHERTY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming in part and Reversing in part.

Upon the rejection by the state auditor of certain items in their accounts, the jailers of Floyd, Fleming, Franklin and Oldham counties, respectively, joined in filing this suit for themselves and others similarly situated, seeking a declaration of their rights with respect to them. The accounts containing the items had been duly approved, certified, and presented for payment. The jailers claimed, and the auditor denied, (1) that they were entitled to 75 cents a day for keeping and feeding prisoners regardless of whether they were given one, two, or three meals or none at all during their incarceration; and (2) that they were entitled to

a sum not exceeding $2 a day for furnishing fuel, light, and water to the circuit courts regardless of whether they had personally paid for the supplies and of the fact that the courtrooms were warmed by a furnace heating the entire building.

On the first issue the disallowed items showed a prisoner had been given one meal, another two meals a day, and others that the prisoners had been received after supper on one day and released before breakfast the following day, for which two days' allowance was claimed for each. There was one item where a prisoner had been released from the jail of one county and transferred and placed in the jail of another county on the same day and each jailer claimed compensation of 75 cents for that day. The circuit court adjudged that under subsection 1 of section 356 of the Statutes a jailer is entitled to 75 cents per day or for any part of one day for keeping and dieting a prisoner regardless of whether he was furnished with any food during the day.

The pertinent part of that statute is that providing that jailers shall be allowed "for keeping and dieting a prisoner under like charge (a felony or contempt), per day, seventy-five cents." It is argued by the auditor that since section 2226 provides the jailer shall "furnish them (prisoners) with proper food and lodging during their confinement," if he does not furnish a prisoner with food, as where he is admitted late at night and released early in the morning without being fed, or does not furnish three meals a day, the allowance should be proportionate to the number of meals furnished. If this argument should be sustained then the jailer would receive nothing for lodging and keeping the prisoner. Section 356 also provides a fee of 60 cents for imprisoning and releasing a prisoner. This, however, does not allow compensation for keeping him, with the accompanying responsibility, vigilance, and attention. We do not lose sight of section 1749 of the Statutes to the effect that no officer shall receive any other fee for his services than is allowed by law, or any fee for services rendered when the law has not fixed his compensation, nor for services not actually rendered. But we cannot see the applicability of that statute, for there is a service rendered in keeping the prisoner, though he be not fed, and section 356 of the

Statutes is the law allowing compensation therefor.

It is the common-law rule that judicially a day is the whole or any part of the period of twenty-four hours, from midnight to midnight. We have many cases in which a day is so defined and has been regarded under various circumstances and conditions. Thus in Stewart's Lessee v. Stewart, 26 Ky. (3 J. J. Marsh.) 48, the right of a widow to dower in property for which a deed was executed by her husband on the day of their marriage but before the ceremony, was sustained. Said the court:

"The law will not cut days into pieces, for the purpose of inquiring whether the deed was executed by Thomas Stewart, to the plaintiff's lessor, before the nuptial knot was tied by the parson, or not until after."

In Fireman's Insurance Company v. McGill, 164 Ky. 621, 176 S. W. 27, 28, it is said (quoting Blackstone):

"In the space of a day all the twenty-four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes." Instead of ignoring this universal and ancient rule, several reasons suggest themselves for applying it here. We have no doubt that this was the intention of the Legislature for no provision was made for splitting up the per diem as between the "keeping" and the "dieting" or according to the number of meals furnished the prisoner. The appellant cites in support of his contention an Indiania and a Tennessee case. The former one, Pressley, Sheriff, v. Board of Commissioners of Marion County, 80 Ind. 45, held that under the statute the sheriff (who was the jailer ex officio) was not entitled to charge for boarding a prisoner for a full day when he had in fact furnished board for a part of the day only. The difference here is in the statutes. The Indiana statute was, as stated in the opinion, "for boarding the prisoner alone and for nothing else." The latter case, State v. Trotter, 142 Tenn. 160, 218 S. W. 230, 232, also held that the officer was entitled to receive pay only for meals actually furnished a prisoner on the basis of 50 cents for three meals. As stated in the opinion, the act "expressly provides, in substance, that this amount shall be paid only in the event that

three meals a day be furnished the prisoner; that it is further expressly provided 'that no sheriff shall be allowed compensation for feeding prisoners unless after commitment he actually feeds said prisoners.'' There is neither an express nor an implied provision such as that in our statute. Construing a former law providing compensation to the jailer for ''boarding'' prisoners, the term was held to include the locking in of each prisoner, keeping him locked in, and liberating him upon proper authority. Said the court:

> ''We can conceive of no reason why the jailer should be allowed for feeding, watering, and bedding a prisoner, and not so allowed for detaining him. Each is a distinct service, and each an element of expense to the jailer.''

State ex rel. v. Drummond, 128 Tenn. 271, 160 S. W. 1082, 1083.

The statute of Texas construed in Dallas County v. Reynolds (Tex. Civ. App.) 199 S. W. 702, 703, is much like ours. It provided per diem compensation of not less than 40 cents nor more than 50 cents for each prisoner, to be fixed by the commissioner's court ''for safe-keeping, support, and maintenance of prisoners confined in the county jail.'' Differentiating its case from the Indiana case, supra, and elaborately considering the meaning of the word ''day'' as used in legislative enactments, the court held that the officer was entitled to the full per diem allowance regardless of the number of hours in the day the prisoner was kept by the sheriff. This was followed in Harris County v. Hammond (Tex. Civ. App.) 203 S. W. 451.

It is our opinion that the judgment declaring that a jailer is entitled to 75 cents for keeping a prisoner each day regardless of whether he remains in jail the whole of the day or a part of a day, or is given any diet, is correct.

The basis of the second question is subsection 4 of section 356 of the Statutes providing an allowance to the jailer ''for furnishing fuel, light and water to the circuit court, not exceeding two dollars per day.'' The circuit court construed this in the abstract as entitling the jailer to ''an amount not to exceed $2 per day for the furnishing of fuel, light and water, or for the furnishing of any of the items named, or rendering such

service and material as will result in heating, lighting or supplying water, or any of said items to the circuit court an amount in the discretion of the court.'' But it further held that where the ''county pays for fuel, light and water and the courtroom is equipped with modern heating, lighting and water facilities, the jailer is not entitled to claim or charge under the section of the statutes, supra.'' Accordingly, it was adjudged that the jailers of Fleming and Oldham counties were entitled to the allowance as it was shown each of them was required to and did carry coal and make fires in the courtroom, and jury rooms; furnished drinking water for the court and water for cleaning the rooms; looked after the cuspidors, etc., although the county paid for the coal and the building was equipped with electric lights and water was produced from a nearby well. Also, the same judgment was entered in favor of the jailer of Floyd county who had paid for and furnished fuel, heat, water, and light from his own funds. It was further adjudged, however, that the jailer of Franklin county was not entitled to this allowance although he or his employees fired the furnace which heated the courtroom, along with other parts of the building, kept the lighting, heating, and water facilities in good order, the county paying for the fuel, electricity, and water and the jailer receiving $60 per month for janitor services under section 3948, of the Statutes. A cross-appeal is prosecuted from the part of the judgment which disallowed the claim of the Franklin county jailer.

The construction of the statutes under the last state of facts, is, therefore, before us and the meaning to be ascribed to the keyword ''furnishing'' is the specific question.

Without going further back, it is found that in the 1852 Edition of the Revised Statutes, allowances were made to the jailers for these services in this language:

''For each day he attends the circuit court, when in session, one dollar.'' And also, ''The amount allowed by the circuit court for fuel and candles furnished for the court during the term.''

In the 1873 Edition of the General Statutes, this last item reads thus:

''For furnishing fuel, lights, etc., to circuit and

county courts a reasonable compensation not exceeding $2 per day, to be allowed by the respective courts, the former to be paid out of the treasury and the latter out of the county levy.''

It was in the general revision of the statutes in 1893 that the present form came into the law.

It would therefore seem that originally, when the fuel was back logs, and later stove wood, obtained from nearby forests; the lights were candles and then of kerosene lamps; and the water came from the town pump or courthouse cistern, it was contemplated that the jailer should supply these things for the allowance made by the circuit court, and the word ''furnish'' carried its full meaning of supplying and applying. But in 1908, chapter 44 (if not sooner), cognizance of changing conditions was taken by the Legislature and section 3948 of the Statutes, which makes the jailer superintendent of the courthouse and other public property, was amended by inserting this language:

''And the fiscal court of each of said counties shall annually appropriate, of the county funds, a sum sufficient to purchase the labor and materials necessary to keep the public property aforesaid, including the jailer's residence, if owned by the county, in repair and in clean, comfortable and presentable condition, and heat and light the same; said sum so appropriated to be expended by the jailer for the purposes aforesaid.''

Subsection 4 of section 356 under consideration must be read in the light of that amendment. It cannot be said that the allowance referred to was repealed by this amendment by implication. Rather is it to be regarded that the intention was to relieve the jailer of a part of his duty, or at least to make clear that he was not required to pay for these things. See Adair Fiscal Court v. Conover, 141 Ky. 743, 133 S. W. 761; Brummal v. Jackson, 145 Ky. 630, 140 S. W. 1016. Confirmatory of this view is the fact that in 1910 (chapter 96) when section 356 was amended in another particular, this subsection 4 was re-enacted in the same language. This was done, of course, with full knowledge that payment for the fuel, lights, and water to be furnished the circuit court was being made by the county under the existing law. The duty then devolving upon the jailer

must have been understood to be only to use the materials and put the water in the courtroom for the comfort and convenience of the court. The two sections of the law read together are not only consistent but necessary, else the purchase of the coal, of the electricity, and of the water is of no effect. Fuel in the basement, potential light in the wire, and water in the pipes mean nothing to the court in session unless some one puts them to use and accomplishes the purposes for which they are supplied by the county. Somebody must turn on and off the heat and the lights and make the drinking water available for the officers, juries, and parties litigant. The word "furnish" is an indefinite and broad word and includes within its meaning such services. 27 C. J. 931.

The duty of caring for the needs and convenience of the court is not comprehended by that statute under which the jailer is allowed a salary as custodian or janitor of the courthouse. His duties as such require him to keep the courtrooms clean, but to regard it as covering the other service would make this specific statute inapplicable where the jailer performs such services as did the three whom the circuit court held entitled to the compensation and would render it meaningless notwithstanding its readoption in 1910 when there were many courtrooms in the state equipped as is that of the Franklin county courthouse.

Nor are the services covered by subsection 3 of section 356 of the Statutes providing an allowance "for each day's attendance upon the circuit court, two dollars." This, we think, is apparent from the fact that for many years that allowance has come down through the statutes along with the one covering the heating, lighting, etc., and it must have been and must be regarded as covering services of a different character, such as producing, guarding, and returning prisoners and fulfilling other duties as an officer of the court. Sections 2225, 2234, Statutes. See Graves County v. Wallace, 144 Ky. 194, 138 S. W. 306.

Before looking to other authorities for the meaning to be given the word "furnishing," we look again to section 2226 of the Statutes, considered above. By it the jailer is required to "furnish" prisoners with food and lodging. Clearly that contemplates not only the payment of the food (because it is not otherwise pro-

vided for), but also the preparation and serving of it to the prisoners. So too must the word used in this statute comprehend the preparation and serving of the heat, light, and water to the court.

In Elkhorn Mining Corporation v. Commonwealth, 173 Ky. 417, 191 S. W. 256, construing the word "furnish" in a statute making it a crime to furnish property in which intoxicating liquors were sold, it is said:

"The word 'furnish', in its common and usual acceptation, means to supply or provide."

We now turn to consider some foreign analogous cases and definitions of the term.

Under an Iowa statute (Code 1931, sec. 5501, subd. 2), providing that "the keeper of each jail must furnish necessary clothing, bedding, fuel, and medical aid" for prisoners, and that all charges for safekeeping and maintaining them should be paid for from the county treasury, the word "furnish" was construed to mean to obtain or procure. In the Tennessee case of State v. Trotter, supra, under a part of the statute which made it the duty of the jailer to "furnish" prisoners with beds, etc., and "plenty of good, clean water," it was held that he was not required to bear the expense of furnishing such water and his duty was only to see that the prisoners were supplied with it. The jail (at Knoxville) was modern and the water was furnished by the water department of the city into the jail by means of pipes constructed at the expense of the county.

We think that is the interpretation to be put upon the word "furnishing" in our statute under consideration, and that even though the courtroom be heated by the furnace and lighted by a system of electric lights, and water is carried into the building from the city water works, the jailer is entitled to a reasonable compensation, within the limit stipulated, if he does anything towards making those facilities and materials available to the circuit court. This conclusion is consonant with the decision in Threlkeld v. Livingston County Fiscal Court, 118 Ky. 330, 80 S. W. 1095, 1096, 26 Ky. Law Rep. 211, construing a similar statute having relation to county courts, that the jailer "is not to be paid for any of these things unless he actually renders the services." Of like effect is Hickman County v. Jackson,

153 Ky. 551, 156 S. W..391. The meaning of the terms now under consideration was not involved in those suits.

We, therefore, concur in the circuit court's general construction of subsection 4 of section 356 of the Statutes, but are unable to agree with his conclusion as to its application in the one instance. On the record we regard the claim and account of the Franklin county jailer as showing that he did furnish fuel, light, and water to the court during its regular September term, although the building, including the courtroom, was heated by one furnace and lighted by one system and the water was supplied by the plumbing in the building, all of which was paid for by the county. That he did render such service was duly certified by the court to the auditor and the allowance was made as reasonable compensation for whatever he did. That is to be accepted as prima facie evidence of the correctness and legality of the claim. Section 340a-1, Statutes.

Accordingly, the judgment is affirmed on the direct appeal and reversed on the cross-appeal, with directions to enter judgment declaring the rights of the parties to be in accord with this opinion.