## Green v. Commonwealth ex rel. Helms.

May 26, 1944.

A. W. Mann for appellant.

Dinkle & Fannin and George F. Gallup for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

By this appeal Harry Green seeks to reverse the judgment of the Boyd Circuit Court that he is the father of the bastard child of Susie Helms, and as such should pay her $10 per month for the child's support until it arrives at the age of 16 years.

The errors assigned are: 1, That the verdict is flagrantly against the evidence; 2, that the trial judge should have set aside the swearing of the jury when the baby was exhibited to the jury in disobedience to the ruling of the court; 3, as the proof did not show the woman to be unmarried at the time the child was begotten, the court should have directed a verdict in favor of appellant; 4, there was no evidence upon which the jury could base its finding that $10 per month was necessary for the support of the child.

The Green and Helms families had been neighbors and friends in Ashland. After the Greens moved to Coal Grove, Ohio (which is directly across the Ohio River from Ashland, Ky.), they lost their only child and Mrs. Green's health became impaired. In November, 1940, Susie Helms, then about 16 years of age, accepted employment in the Green home as a companion to Mrs. Green and to assist in the housework.

Susie's bedroom was separated from that of the Greens by a living room. She testified that around midnight on March 7, 1941, appellant left the bed of his wife, came to her bed, placed one hand over her mouth, held her with the other and had sexual relations with her. She further testified that Green threatened to kill her if she related what occurred; also, that before departing for work the next morning he left a note on a table in his home containing a threat of death if she left.

The girl testified that Green had no further sexual relations with her and she remained in his home until May 30, 1941, at which time she returned to her own home in Ashland. She further testified that in June, 1941, Green brought to her home near Ashland, Ky., some medicine, but did not tell her its purpose, and she did not know then that she was pregnant and had not told Green she was. Her baby was born on November 23, 1941, and was six months old at the time of the trial.

Green denied going to the girl's bed, or having relations with her, or bringing medicine to her after she left his home. He testified that on March 7, 1941 (which was

Friday), his wife and her brother, Harold Harris, who was then a boarder in his home, went to Columbus, Ohio, to spend the week-end with Mrs. Harris. That he (Green) took Susie to her home in Ashland, Ky., that afternoon and she did not return to his home until the middle of the following week.

Green is corroborated by his wife and brother-in-law that Susie was taken to Ashland this Friday afternoon and that Mrs. Green and Harris went to Columbus late that afternoon. Mrs. Harris testified her husband and sister-in-law arrived at her home Friday night around 9:30 and remained until Sunday afternoon. However, Mrs. Helms testified that her daughter was not brought home Friday afternoon.

The testimony of Susie is not convincing as to the manner in which Green attacked her. Of course, no man with one of his hands over his victim's mouth and the other holding her could have sexual relations with her. Nor does it sound reasonable that a man would leave a note on a table in his home containing a threat of death against a girl he had attacked the previous night. However, it is the experience of trial judges and of lawyers who have participated in criminal cases that almost invariably young girls who have surrendered their virtue attempt to exculpate themselves by some unlikely tale that they were the victims of force or threats, or both.

If appellant had been convicted of rape, we would be inclined to say in the circumstances presented by this record that the verdict is flagrantly against the evidence. But here the verdict is that he is the father of Susie's child and we cannot say that it is flagrantly against the evidence. We are not concerned with the manner in which he had intercourse with this girl, as the question for the jury's determination was, is he the father of her child? A jury in the county court, as well as one in the circuit court on appeal, found that he is, and we are not disposed to say that the verdict is flagrantly against the evidence merely because Susie told an unreasonable tale as to how their sexual act was consummated.

In the affidavit of Green upon which the case was continued he named two absent witnesses whom he swore would testify that Susie had previously told them of her sexual relations with some boys in West Virginia. Neither these nor any other witnesses were introduced at-

tacking Susie's reputation for virtue. The jury saw Susie and Green on the witness stand, observed their demeanor and is in a better position to pass upon their credibility than we are. The verdict is not that Green raped Susie, but that he is the father of her child, and as it is a reasonable verdict it cannot be said to be flagrantly against the evidence. Sheperd v. Com., 236 Ky. 290, 33 S. W. 2d 4.

If the baby was exhibited to the jury contrary to the ruling of the trial court, as is contended by appellant, the judge had the power to, and very likely would have, inflicted punishment for contempt. However, the exhibiting of the baby was not ground for discharging the jury upon appellant's motion if it was competent to introduce the baby in evidence.

Whether profert of a child may be made during a bastardy proceeding so as to give the jury the benefit of the resemblance, or lack of resemblance, to the defendant has never been determined in this jurisdiction. A bastardy proceeding must not be confused with the trial of one charged with rape, or seduction under promise of marriage. In Kayes v. Com., 221 Ky. 474, 298 S. W. 1096, it was written that in a seduction case it was not competent to prove pregnancy, or the birth of a baby, while in a prosecution for rape it was. As there stated, it is apparent the reason for the two rules is that in the former case the gravamen of the offence is the promise of marriage, and pregnancy sheds no light on that; while in the latter offence, one of the issues is whether or not there was intercourse, and pregnancy does establish that fact.

In James v. Com., 190 Ky. 458, 227 S. W. 562, 564 (a bastardy proceeding), the question of whether it was competent to make profert of the baby was not directly presented, therefore it was not passed on. But the question is now squarely before us and we do not hesitate to rule thereon.

The authorities appear not only to be in great conflict but in confusion as well. However, most, if not all, courts agree that where a child's paternity is the issue it is competent to exhibit it for the purpose of showing whether or not it is of the race or color which would characterize the offspring of its mother and putative father. 7 Am. Jur. sec. 36, p. 651; Warlick v. White, 76 N. C. 175; Miller v. State, 103 Neb. 591, 173 N. W. 577.

See annotations 31 A. L. R. 1119; 40 A. L. R. 130 and 95 A. L. R. 316, where many authorities may be found.

As to whether the child may be exhibited to the jury so that it may make comparisons as to the likelinesses or dissimilarities between it and the alleged father, the decisions are divided into three general groups, 10 C. J. S., Bastards, sec. 92, p. 177; 7 Am. Jur. sec. 36, p. 651. The first holds the baby may be exhibited to the jury; the second that it may not be; the third that it may be so exhibited if in the discretion of the trial court it is old enough to possess settled features or other corporeal indications.

Supporting the first rule, that profert of the child may be made, are the courts of Alabama, Arkansas, California, Georgia, Kansas, Michigan, Mississippi, Oregon, South Carolina, Utah, Virginia, Vermont and West Virginia. But it is not unusual to find in certain of their decisions that some of these courts have applied the limitation of the third rule and do not allow the baby to be exhibited unless in the discretion of the trial court it is old enough to have settled features or physical characteristics. Other of their decisions admit the introduction of the baby in evidence regardless of its age. 10 C. J. S., Bastards, sec. 92, p. 177. Annotations in 95 A. L. R. 316 and 40 A. L. R. 128.

On the theory that common observation teaches that in the same family children differ in features, color of hair, eyes and complexion, and often have no resemblance to either parent, and that it would be a dangerous doctrine to permit a child's paternity to be determined by comparing its physiognomy with others, some courts refuse to allow the child to be introduced in evidence. The courts so holding appear in 7 C. J. sec. 125, p. 993, in note 46; 10 C. J. S., Bastards, p. 92 in note 54. See also annotations 40 A. L. R. 137, 95 A. L. R. 317. This may be called the minority rule.

A middle course is suggested in 1 Wigmore on Evidence, 3rd Ed., sec. 166, p. 623, which is the third rule mentioned above, that profert should be made only in those cases where the child in the discretion of the trial judge is old enough to possess settled features, or corporeal indications. With this limitation, the rule that profert may be made of the child has been adopted in Lohsen v. Lawson, 106 Vt. 481, 174 A. 861, 95 A. L. R. 309; Flores v. State, 72 Fla. 302, 73 So. 234, 235 L. R. A.

1917B, 1143; Ratzlaff v. State, 102 Okl. 263, 229 P. 278; State v. Anderson, 63 Utah 171, 224 P. 442, 40 A. L. R. 94; Shadix v. Brown, 216 Ala. 516, 113 So. 581. Overlock v. Hall, 81 Me. 348, 17 A. 169.

It is common knowledge that children do not develop uniformly and it is difficult to see how a judge is any better qualified than the jury to determine when a child's features become so fixed, or physical characteristics appear, that a resemblance may be seen between it and the alleged father. Therefore, we adopt the rule that the child may be admitted in evidence regardless of its age and that the immaturity of the child goes to the weight of the evidence rather than to its admissibility. This rule has been followed in Scott v. Donovan, 153 Mass. 378, 26 N. E. 871; People v. Haab, 260 Mich. 673, 245 N. E. 545; State v. Heavener, 146 S. C. 138, 143 S. E. 674; State v. Danforth, 73 N. H. 215, 60 A. 839, 111 Am. St. Rep. 600, 6 Ann. Cas. 557; Land v. State, 84 Ark. 199, 105 S. W. 90, 120 Am. St. Rep. 25; Anderson v. Aupperle, 51 Or. 556, 95 P. 330; Com. v. Pearl, 33 Pa. Super 97; People v. Richardson, 161 Cal. 552, 120 P. 20; Zell v. State, 15 Ohio App. 446.

It follows that appellant's motion to discharge the jury was correctly overruled because it was competent to make profert to the jury of this six months old baby.

We have not before us the question of opinion evidence as to whether the child bears a resemblance to the putative father, consequently we do not pass on it. Should the reader be interested in that question, reference is made to Hilliker v. Thorndale, 295 Ky. 148, 173 S. W. 2d 977; 7 Am. Jur. sec. 35, p. 649; 10 C. J. S., Bastards, sec. 92, p. 177, and annotations in 40 A. L. R. 100 and 95 A. L. R. 315.

We cannot accept appellant's argument that he was entitled to a directed verdict because the proof does not show Susie was unmarried at the time the child was begotten. It is true that under KRS 406.020 only a woman who is unmarried at the time the child was begotten may sue out a bastardy warrant. Smith v. Wager's Adm'rs, 238 Ky. 609, 38 S. W. 2d 685. But the record does not contain the warrant, and as this is a civil proceeding, James v. Com., 190 Ky. 458, 227 S. W. 562; Emmons v. Com., 197 Ky. 674, 247 S. W. 956, 31 A. L. R. 601; Com., etc., v. Bondie, 277 Ky. 207, 126 S. W. 2d 148, it will be presumed that the part of the record appellant

did not bring here will support the verdict. Ritchie v. Perry County, 276 Ky. 57, 122 S. W. 2d 988. Also see Turner v. Com., 1 B. Mon. 205, 207, 40 Ky. 205, 207, where the court said the history of the case and the incidental circumstances lead to the conclusion that the woman was unmarried.

A sufficient answer to the argument that the record contains no proof upon which the jury could base its finding that $10 per month was necessary for support of the child is that it is inconceivable that during these times a child could be supported on less. Besides, the evidence shows that the alleged father was earning $39 per week, and the jury saw the girl and heard her testimony that she was working in the Green home as a semi-domestic, which was sufficient evidence to allow the jury to arrive at a proper verdict on a basis befitting the station in life of the parties. Maher v. Com., 242 Ky. 51, 45 S. W. 2d 465.

Perceiving no error which we deem prejudicial to appellant's substantial rights, the judgment is affirmed.